ATTORNEYS FOR CRISIS CONNECTION, INC.
Jon Laramore
Matthew T. Albaugh
Trina K. Taylor
Indianapolis, Indiana

ATTORNEY FOR RONALD KEITH FROMME
S. Anthony Long
Boonville, Indiana

ATTORNEY FOR AMICI CURIAE INDIANA
COALITION AGAINST DOMESTIC VIOLENCE,
BATTERED WOMEN'S JUSTICE PROJECT –
DOMESTIC ABUSE INTERVENTION PROGRAMS,
INC., & INDIANA COALITION AGAINST
SEXUAL ASSAULT
Kerry Hyatt Blomquist
Indianapolis, Indiana

ATTORNEY FOR AMICI CURIAE NATIONAL
ASS'N OF SOCIAL WORKERS & NATIONAL
ASS'N OF SOCIAL WORKERS, INDIANA CHAPTER
Paul L. Jefferson
Indianapolis, Indiana

FILED
Jun 23 2011, 12:57 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 19S05-1012-CR-678

IN RE SUBPOENA
TO CRISIS CONNECTION, INC.

STATE OF INDIANA,

*Appellee (Plaintiff below),*

v.

RONALD KEITH FROMME,

*Appellee (Defendant below).*

Appeal from the Dubois Circuit Court, No. 19C01-0708-FA-192
The Honorable William E. Weikert, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 19A05-0910-CR-602

**June 23, 2011**

**Sullivan, Justice.**

Ronald Keith Fromme, a defendant in a child molesting prosecution, contends that he has a constitutional right to inspect the records of a nongovernmental counseling agency, notwithstanding the General Assembly's enactment of a "victim advocate privilege" shielding such records from discovery. Because neither the Due Process Clause nor the Sixth Amendment requires disclosure of information protected by this privilege in the present case, we enforce the victim advocate privilege as enacted.

## Background

Crisis Connection, Inc., is a nonprofit organization that "provide[s] services for emotional and psychological conditions that occur to an individual against whom an act of domestic or family violence, sexual assault, or dating violence is committed." Appellant's App. 28. It operates in the Indiana counties of Crawford, Dubois, Orange, Perry, and Spencer.

After being charged with two counts of child molesting, Fromme asked the Dubois Circuit Court to require Crisis Connection to provide him with all records in its possession relating to the alleged victims, M.Y. and D.Y., and their mother. Crisis Connection argued that Indiana's "victim advocate privilege," codified at Indiana Code section 35-37-6-9, gave it authority to refuse record requests in such circumstances. The court ordered Crisis Connection to deliver the records to the court for its in camera review to determine their relevance before turning them over to Fromme.

Before proceeding further, the court agreed to Crisis Connection's request that its decision be reviewed by the Court of Appeals. State v. Fromme (In re Subpoena to Crisis Connection, Inc.), 930 N.E.2d 1169, 1172 (Ind. Ct. App.), aff'd on reh'g, 933 N.E.2d 915 (Ind. Ct. App. 2010). That court concluded that "[t]he interest in privacy asserted by Crisis Connection, while important, [was] not strong enough to bar an in camera review of its records." Id. at 1190.

2

Crisis Connection sought, and we granted, transfer, Crisis Connection, Inc. v. Fromme, 940 N.E.2d 832 (Ind. 2010) (table), thereby vacating the opinion of the Court of Appeals, Ind. Appellate Rule 58(A).

**Discussion**

**I**

The General Assembly enacted Indiana's "victim advocate privilege" in 1987. Pub. L. No. 136-1987, § 5, 1987 Ind. Acts 1872, 1874-77. This privilege protects victims, victim advocates, and victim service providers[1] from being "compelled to give testimony, to produce records, or to disclose any information concerning confidential communications[2] and confidential information[3] to anyone or in any judicial, legislative, or administrative proceeding." Ind. Code § 35-37-6-9(a) (2008).[4] The General Assembly has expressly provided that the victim advocate privilege applies in cases like the present one.[5] Accordingly, the Court of Appeals held

---

[1] The definitions of "victim," "victim advocate," and "victim service provider" are provided in Indiana Code sections 35-37-6-3, -3.5, and -5, respectively.

[2] The Indiana Code defines "confidential communication" as any information exchanged between a victim and victim advocate in the course of their relationship, exchanged or disclosed in a support group in which the victim participated, or exchanged in the presence of a third-party facilitator. I.C. § 35-37-6-1(a). The term includes verbal and written communications, including advice, notes, reports, statistical data, memoranda, working papers, records, and personally identifying information. I.C. § 35-37-6-1(b).

[3] The Indiana Code defines "confidential information" as personally identifying information, descriptions of physical appearance, and the case file and case history of any person who seeks or receives services from a victim advocate. I.C. § 35-37-6-1.5(a).

[4] The victim advocate privilege provides extensive protection from disclosure; in fact, it is broader than both the counselor-client privilege, Ind. Code § 25-23.6-6-1 (2010), and psychologist-patient privilege, I.C. § 25-33-1-17. Unlike the victim advocate privilege, both the counselor-client privilege and psychologist-patient privilege contain a "homicide exception," allowing disclosure of otherwise privileged communications in homicide proceedings if the disclosure relates directly to the fact or immediate circumstance of the homicide. I.C. §§ 25-23.6-6-1(1), 25-33-1-17(1).

[5] The statute contemplates only two instances where information is not confidential: 1) if the victim files criminal charges, institutes a civil suit, or reports allegations of criminal conduct to a law enforcement agency against the victim service provider or victim advocate; and 2) alleged child abuse or neglect that is required to be reported under Indiana Code article 31-33. Ind. Code § 35-37-6-1.5(b) (2008). If a victim brings a malpractice suit against a victim advocate or victim service provider, then the victim advocate may testify or produce records regarding confidential communications with the victim. I.C. § 35-37-6-11.

that this privilege applies to Crisis Connection's records, <u>In re Subpoena to Crisis Connection</u>, 930 N.E.2d at 1175; we adopt that portion of its opinion and incorporate it by reference, App. R. 58(A)(1).

## II

In Indiana, privileges are statutory in nature and it is within the General Assembly's power to create them. <u>State v. Pelley</u>, 828 N.E.2d 915, 918 (Ind. 2005). By enacting the victim advocate privilege, the General Assembly has recognized the societal value of protecting the confidences existing within that relationship. <u>See</u> <u>Canfield v. Sandock</u>, 563 N.E.2d 526, 529 (Ind. 1990) (discussing the creation of the physician-patient privilege).

Nevertheless, we have acknowledged that when the General Assembly creates a privilege, it puts two policies of the law in direct conflict:

> On the one hand is a policy which dictates exclusion of material and relevant evidence for its effectuation; on the other is the policy which favors full disclosure of all relevant facts at trial in order to arrive at a just determination of the issues presented. While the latter must give sway to the former where applicable, it would seem unwise indeed to give unwarranted effect to the former so as to utterly and unreasonably frustrate the fact finding process.

<u>Collins v. Bair</u>, 256 Ind. 230, 236-37, 268 N.E.2d 95, 98 (1971) (emphasis in original deleted).

Thus, we are bound by the General Assembly's determination of whether a particular interest is sufficient enough to justify the creation of a privilege and the scope of the protection provided under that privilege. <u>See</u> <u>id.</u> at 238, 268 N.E.2d at 99 (mindful "not [to] discount the concern of the Indiana General Assembly that the confidential nature of the physician-patient relationship be preserved at the cost of rendering certain evidence inadmissible," but concluding that a patient waives the privilege "by pursing a course of conduct inconsistent with a continued observance of the privilege"); <u>Terre Haute Reg'l Hosp., Inc. v. Basden</u>, 524 N.E.2d 1306, 1309-11 (Ind. Ct. App. 1988) (refusing to write-in a good faith requirement or to require a balancing

---

A victim may consent to the disclosure of confidential communications or confidential information. I.C. § 35-37-6-9(a).

4

test in the application of the peer review privilege); see also Massey v. State, 267 Ind. 504, 509-10, 371 N.E.2d 703, 706-07 (1978) (applying the probation officer-juvenile privilege).

**III**

The Court of Appeals did not grant Fromme's request that Crisis Connection's records be provided directly to him. But the court did hold that they should be turned over to the trial court for determining the records to which Fromme was entitled. In re Subpoena to Crisis Connection, 930 N.E.2d at 1190. The court's decision was grounded in Fromme having met a three-step test we have established for the discoverability of records by a criminal defendant in certain circumstances: (1) there must be sufficient designation of the items sought to be discovered (particularity); (2) the requested items must be material to the defense (relevance or materiality); and (3) if the first two requirements are met, the trial court must grant the request unless there is a showing of "paramount interest" in nondisclosure. State v. Cline (In re WTHR-TV), 693 N.E.2d 1, 6 (Ind. 1998) (citing Kindred v. State, 540 N.E.2d 1161, 1174 (Ind. 1989)).[6]

In another case handed down today, Crawford v. State, No. 49S05-1106-CR-370, — N.E.2d — (Ind. 2011), we apply this test to determine the discoverability of information not protected by privilege. But this test is not reached when the question is the discoverability of information that is otherwise privileged. The General Assembly has made this information off-limits and we are compelled to uphold its decision unless it violates the Constitution.

The case law makes clear that the three-step test applies only to discover nonprivileged information. In Jorgensen v. State, we applied this test to determine the discoverability of non-privileged information held by a psychologist under the homicide exception to the psychologist-patient privilege, as discussed in footnote 4, supra. 574 N.E.2d 915, 917-18 (Ind. 1991). We explicitly stated that the test applied "[w]ith respect to non-privileged information." Id. at 917;

---

[6] In Kindred, we referenced this test to determine whether a trial judge properly reviewed in camera a letter from a confidential informant sent to the prosecutor. 540 N.E.2d at 1173-74. In that case, the trial court reviewed the letter to determine whether it contained exculpatory information (which would have been required to have been disclosed by the prosecution under Brady v. Maryland, 373 U.S 83 (1963), as discussed in Part IV-B, infra). Id.

<u>see</u> <u>id.</u> at 918 (instructing the trial court on remand to <u>first</u> determine whether the information sought was privileged and then determine whether the nonprivileged information was material to the defense under the three-step test); <u>Pelley</u>, 828 N.E.2d at 920-23 (Ind. 2005) (providing that "some discovery" is permissible under <u>Jorgensen</u>, but unless the homicide exception applies, any communication between the psychologist and patient is privileged and not discoverable).

To the extent that the decisions of the Court of Appeals have applied the three-step test to "privileged" information, they are distinguishable. For example, in <u>Williams v. State</u>, the privilege making prescriptions confidential contained an exception that allowed the information to be disclosed "in connection with a criminal prosecution." 819 N.E.2d 381, 387 (Ind. Ct. App. 2004), <u>trans. denied</u>. Similarly, the privilege in <u>Sturgill v. State</u> contained a provision granting the court access to the information. 497 N.E.2d 1070, 1071 (Ind. Ct. App. 1986).[7]

In the cases discussed above, some exception to an otherwise-applicable privilege existed to allow the court to review the information – the court either reviewed the information because some of the information was or could have been nonprivileged or the privilege itself authorized review. But unlike those cases, an <u>in camera</u> review of the information in this case would not reveal any nonprivileged information and the privilege does not give the court that authority. As we have already recognized, there is no dispute that the records Fromme seeks from Crisis Connection are covered by the victim advocate privilege, and the General Assembly has expressly provided that the privilege applies in cases like this to prohibit <u>any</u> disclosure. Put differently, there is no chance that the information sought in this case is anything other than privileged, and under our decisions in <u>Jorgensen</u> and <u>Pelley</u>, that ends the inquiry.

---

[7] In <u>Moore v. State</u>, the trial court reviewed a police confidential-informant file <u>in camera</u> and ordered the police to produce certain records, presumably to protect the criminal defendant's rights under <u>Brady v. Maryland</u>, as discussed in Part IV-B, <u>infra</u>. 839 N.E.2d 178, 181, 185 (Ind. Ct. App. 2005), <u>trans. denied</u>. In <u>Skinner v. State</u>, the Court of Appeals applied the three-step test to determine the discoverability of materials protected by the attorney-client privilege despite our case law suggesting that the test should only be applied to discover nonprivileged information. 920 N.E.2d 263, 265-66 (Ind. Ct. App. 2010). However, the court ultimately concluded that the information was "not discoverable due to the protection provided by the attorney-client privilege." <u>Id.</u> at 267

6

We acknowledge, of course, that the privilege must yield to Fromme's constitutional rights. And he contends that invoking it to prevent his access to Crisis Connection's records violates his rights under the Sixth Amendment[8] to confront witnesses against him and to compel witnesses in his favor, as well as his rights under the Fourteenth Amendment[9] to due process of law.[10] The constitutionality of this privilege against criminal defendants' rights has not been challenged in the 20-plus years of the privilege's history in our state. However, other courts, including the United States Supreme Court, have addressed the intersection of similar privileges with the Confrontation Clause, the Compulsory Process Clause, and the Due Process Clause. Pennsylvania v. Ritchie, 480 U.S. 39 (1987), is the leading case in this regard.[11]

## IV-A

The Supreme Court's Confrontation Clause cases have been divided generally into two broad categories: "cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." Delaware v. Fensterer, 474 U.S. 15, 18 (1985) (per curiam). Accordingly, it has been recognized that "[t]he Confrontation Clause provides two types of protections for a criminal defendant: the right phys-

---

[8] The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor . . . ." U.S. Const. amend. VI. These Sixth Amendment rights are applicable to the States by virtue of the Fourteenth Amendment. Washington v. Texas, 388 U.S. 14, 17-19 (1967) (Compulsory Process Clause); Pointer v. Texas, 380 U.S. 400, 403 (1965) (Confrontation Clause).

[9] The Due Process Clause of the Fourteenth Amendment provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[10] The Court of Appeals concluded that Fromme had waived any state constitutional argument because he had only mentioned Article I, Section 13 of the Indiana Constitution without providing any separate analysis of that provision. In re Subpoena to Crisis Connection, 930 N.E.2d at 1176 n.4 (citing Davis v. State, 907 N.E.2d 1043, 1048 n.10 (Ind. Ct. App. 2009)). Fromme does not seem to challenge this conclusion and in fact, only mentions Article I, Section 12 in his Reply to Crisis Connection's Petition to Transfer without providing any separate analysis. We agree with the Court of Appeals that any state constitutional argument has been waived.

[11] For a summary of the Court's decision in Pennsylvania v. Ritchie and what issues remain after that decision, see Clifford S. Fishman, Defense Access to a Prosecution Witness's Psychotherapy or Counseling Records, 86 Or. L. Rev. 1 (2007).

ically to face those who testify against him, and the right to conduct cross-examination." Ritchie, 480 U.S. at 51 (plurality opinion) (citing Fensterer, 474 U.S. at 18-19).

Criminal defendants in cases like the present one have traditionally argued a violation of this second protection – by denying access to records necessary to prepare his or her defense, so the argument goes, the trial court has interfered with the defendant's right of cross-examination. See, e.g., id.; People v. Turner, 109 P.3d 639, 646 (Colo. 2005) (defendant arguing that the privilege interfered with cross-examining the alleged victim by probing her motive and credibility); Commonwealth v. Wilson, 602 A.2d 1290, 1296 (Pa. 1992) (defendant arguing that the privilege interfered with the right to conduct effective cross-examination), cert. denied. Indeed, that is essentially Fromme's argument in this case.

A plurality of the Supreme Court, however, has rejected this argument under the Confrontation Clause.[12] Ritchie, 480 U.S. at 51-54. In Ritchie, the State of Pennsylvania had created an agency to investigate cases of suspected mistreatment and neglect called Children and Youth Services ("CYS"). Id. at 43 (majority opinion). After being charged with several sex offenses against his daughter, Ritchie subpoenaed CYS for her records. Id. CYS claimed that the records were privileged under a Pennsylvania statute similar to the one at issue in the present case. Id. Ritchie argued that his ability to question his daughter at trial was hindered without the CYS material because he did not know what types of questions would expose the weaknesses in her testimony, if she had made statements inconsistent with her trial testimony, or if she had acted with an improper motive. Id. at 51 (plurality opinion). Thus, according to Ritchie, he had been denied his right to cross-examine his daughter effectively. Id. at 51-52.

But the plurality opinion refused to conclude that Ritchie's Sixth Amendment right to cross-examination had been violated. Instead, it reasoned that such a broad interpretation of the

---

[12] The plurality opinion was authored by Justice Powell and joined by Chief Justice Rehnquist and Justices White and O'Connor. Ritchie, 480 U.S. at 42, 51. Justice Blackmun concurred in part and in the judgment. Id. at 61-66 (Blackmun, J., concurring in part and concurring in the judgment). Justices Brennan and Marshall dissented on the merits. Id. at 66-72 (Brennan, J., dissenting). Justices Stevens and Scalia (joined by Justices Brennan and Marshall) dissented on jurisdictional grounds. Id. at 72 (Stevens, J., dissenting).

Justice Blackmun later expressed his disagreement with the Ritchie plurality in Kentucky v. Stincer, 482 U.S. 730, 738 n.9 (1987).

Confrontation Clause would "transform [it] into a constitutionally compelled rule of pretrial discovery." Id. at 52. Basing its conclusion on precedent, the plurality categorized the right of confrontation as a "trial right." Id. (emphasis in original) (citing California v. Green, 399 U.S. 149, 157 (1970) ("[I]t is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause[.]"); Barber v. Page, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right[.]")). It instructed that "[t]he ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." Id. at 53. Thus, the pluarlity concluded, "[W]ith respect to this issue, the Confrontation Clause only protects a defendant's trial rights, and does not compel the pretrial production of information that might be useful in preparing for trial." Id. at n.9.[13]

Relying on the fact that Ritchie represented only a plurality view, the Court of Appeals concluded that Fromme had a Confrontation Clause right to have these documents inspected before trial. We do not agree. We have previously held that a criminal defendant's right under the Confrontation Clause to be present at all critical stages of the criminal proceedings is only implicated when it affects the accused's opportunity to cross-examine. Ridley v. State, 690 N.E.2d 177, 180 (Ind. 1997) (citing Kentucky v. Stincer, 482 U.S. 730, 737-38 (1987)); Stevenson v. State, 656 N.E.2d 476, 479 (Ind. 1995) (holding defendant had no Sixth Amendment right to be present at the pre-trial conference at issue). Moreover, we note that many courts have refused to conclude that the Confrontation Clause provides defendants with the right to confront witnesses at pretrial hearings. See Oakes v. Commonwealth, 320 S.W.3d 50, 55-56 (Ky. 2010) (relying on authority from other jurisdictions to conclude that the Confrontation Clause does not apply to

---

[13] Moreover, the plurality in Ritchie distinguished its case from Davis v. Alaska, 415 U.S. 308 (1974). In Davis, the trial court had prohibited defense counsel during cross-examination from referring to the juvenile record of a key prosecution witness because of an Alaska rule prohibiting the admission of such a record in a court proceeding. 415 U.S. at 310-12. The Court in Davis concluded that the defendant was denied his right of cross-examination because of his inability to refer to the witness's juvenile record. Id. at 318. But according to the Ritchie plurality, the constitutional error in Davis was "not that Alaska [had] made this information confidential; it was that the defendant was denied the right 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" 480 U.S. at 54 (emphasis in original) (quoting Davis, 415 U.S. at 318). The plurality concluded that in Ritchie's case, "the Confrontation Clause was not violated by the withholding of the CYS file; it only would have been impermissible for the judge to have prevented Ritchie's lawyer from cross examining the daughter." Id.

9

pretrial hearings); State v. Timmerman, 218 P.3d 590, 593-95 & n.2 (Utah 2009) (same). As we and other jurisdictions have not extended Confrontation Clause rights to pretrial settings in other cases, we do not do so here. See also People v. Hammon, 938 P.2d 986, 992-93 (Cal. 1997) (declining to extend Confrontation Clause rights to require pretrial disclosure of privileged records in light of the divided views expressed on this issue in Ritchie), cert. denied. Because of the procedural status of this case on interlocutory appeal, we are unable to comment on Fromme's actual cross-examination of any witnesses to probe their bias or motive. Cf. Ritchie, 480 U.S. at 54 (plurality opinion) (failure to disclose CYS file did not violate the Confrontation Clause because defense counsel was able to cross-examine all of the trial witnesses fully); Rubalcada v. State, 731 N.E.2d 1015, 1021 (Ind. 2000) (reviewing the quality of cross-examination after application of privilege limiting access to confidential records and in camera review). But according to the predominate view of the Confrontation Clause, as long as the trial court does not improperly prevent Fromme from cross-examining the alleged victims at trial, his rights under the Confrontation Clause will not be violated. E.g. Ritchie, 480 U.S. at 54 (plurality opinion).

In the absence of a violation of Fromme's rights protected by the Confrontation Clause of the Sixth Amendment, we enforce the victim advocate privilege as provided by the General Assembly.

**IV-B**

Ritchie is also the touchstone for analyzing Fromme's arguments under the Compulsory Process and Due Process Clauses. A majority in Ritchie acknowledged that the Court had had "little occasion to discuss the contours of the Compulsory Process Clause." Id. at 55 (majority opinion). It further recognized that it had "never squarely held that the Compulsory Process Clause guarantees the right . . . to require the government to produce exculpatory evidence." Id. at 56 (emphasis added). Instead, claims like Ritchie's had traditionally been evaluated under the broader protections of the Due Process Clause. Id. Accordingly, because "compulsory process provide[d] no greater protections in this area than those afforded by due process," the Court analyzed Ritchie's claims by reference to the Due Process Clause. Id. (emphasis in original); see

10

<u>also</u> <u>Rubalcada</u>, 731 N.E.2d at 1017-18 (considering together defendant's claimed violations of his rights to due process and compulsory process).

The <u>Ritchie</u> Court first noted the well settled obligation of the government "to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." <u>Id.</u> at 57 (citing <u>United States v. Agurs</u>, 427 U.S. 97 (1976); <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963)). But because none of the prosecution, defense counsel, or trial judge had reviewed the full file, the Court could not say whether any information in the state's possession (recall that CYS was a state agency) was material to Ritchie's defense. <u>Id.</u>

The state argued that such a materiality inquiry was not required in light of the statute rendering the contents of the CYS file privileged and the compelling interest in preserving confidentiality. <u>Id.</u> The <u>Ritchie</u> Court, however, concluded that although there was a strong public interest in protecting this type of sensitive information, it was not so strong as to prevent disclosure in all circumstances. <u>Id.</u> The Court reasoned, "This is not a case where a state statute grant[ed] CYS the absolute authority to shield its files from all eyes." <u>Id.</u> To the contrary, the Pennsylvania privilege allowed for disclosure of the information in several circumstances, including when directed to do so by court order. <u>Id.</u> at 57-58. The Court wrote:

> Given that the Pennsylvania Legislature contemplated <u>some</u> use of the CYS records in judicial proceedings, we cannot conclude that the statute prevents all disclosure in criminal prosecutions. In the absence of any apparent state policy to the contrary, we therefore have no reason to believe that relevant information would not be disclosed when a court of competent jurisdiction determines that the information is "material" to the defense of the accused.

<u>Id.</u> at 58 (emphasis in original). Thus, due process required that the trial court review the CYS file to determine whether it contained material information; if it did, then Ritchie was entitled to a new trial. <u>Id.</u> at 57-58.

The Court in <u>Ritchie</u> expressed no opinion on privileges that prohibit all disclosure whatsoever, including disclosure to judicial personnel or law enforcement. <u>Id.</u> at 57 n.14. Other jurisdictions have therefore distinguished their privileges from that in <u>Ritchie</u> by finding that they

11

provide absolute protection from disclosure and, thus, have not required an in camera review.[14] See Turner, 109 P.3d at 647 (finding that, unlike the statute in Ritchie, the Colorado privilege has no exceptions); State v. J.G., 619 A.2d 232, 237 (N.J. Super. Ct. App. Div. 1993) (finding that New Jersey statute grants absolute privilege); Wilson, 602 A.2d at 1294-95 (finding that Pennsylvania privilege is absolute and prohibits disclosure of records under any circumstances).

The substance of Indiana's victim advocate privilege is similarly distinguishable from that in Ritchie. As mentioned above, the privilege protects victims, victim advocates, and victim service providers from being "compelled to give testimony, to produce records, or to disclose any information concerning confidential communications and confidential information to anyone or in any judicial, legislative, or administrative proceeding." I.C. § 35-37-6-9(a) (emphasis added). It does not authorize any balancing of interests or in camera review in criminal prosecutions; unlike the privilege in Ritchie, it makes no exception for the disclosure of confidential communications or information by court order. Ritchie, 480 U.S. at 57-58.

Moreover, and perhaps more importantly, the Court in Ritchie grounded its due process analysis on the government's obligation under Brady v. Maryland "to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." Id. at 57 (citations omitted). Some jurisdictions have therefore also distinguished their privileges from that in Ritchie by finding that they do not protect agents of the State from disclosure; as such, Brady does not require disclosure of the information.[15] See Turner, 109 P.3d at 647 (Colorado privilege excludes law enforcement personnel from definition of "victim advocate"); see also United States v. Hach, 162 F.3d 937, 947 (7th Cir. 1998) (noting that Ritchie does not apply when the information the defendant seeks is not in the government's possession); United States

---

[14] On this point, the Court of Appeals wrote, "While Ritchie holds open the possibility that the due process clause might apply differently to an absolute privilege, Ritchie itself does not provide support for that proposition, as the Court expressly refused to consider it." In re Subpoena to Crisis Connection, 930 N.E.2d at 1179.

[15] On this point, the Court of Appeals acknowledged that there was no Brady violation in the present case because the information was never in the State's possession, but concluded, "[n]evertheless, [that] the State ha[d], by statute, prevented Fromme from receiving potentially exculpatory information by making certain evidence categorically unavailable to him." In re Subpoena to Crisis Connection, 930 N.E.2d at 1189. This is a telling point, but in the absence of any specific authority for it and in light of the substantial authority cited in the text, we decline to adopt it.

12

v. Shrader, 716 F. Supp. 2d 464, 473 (S.D.W.V. 2010) (Ritchie's analysis of Brady is inapplicable because the records are not in possession of the government or government agent); State v. Pinder, 678 So. 2d 410, 414 (Fla. Dist. Ct. App. 1996) (counselors are not state agents as contemplated by Brady); cf. WTHR-TV v. Milam, 690 N.E.2d 1174, 1176 n.3 (Ind. 1998) (discounting notion that the Brady obligation extends to third parties). But see Burns v. State, 968 A.2d 1012, 1024-25 (Del. 2009) (Ritchie analysis not limited to records held by government).

Indiana's victim advocate privilege is again similarly distinguishable. The definition of "victim service provider" excludes groups that are affiliated with law enforcement. I.C. § 35-37-6-5. The definition of "victim advocate" further excludes law enforcement officers, employees or agents of law enforcement officers, prosecuting attorneys, and employees or agents of prosecuting attorneys. I.C. § 35-37-6-3.5(b). Moreover, the privilege expressly states that it does not "relieve a prosecuting attorney of the constitutional and ethical obligation to disclose exculpatory evidence." I.C. § 35-37-6-14(a)(1). Thus, by its terms, Indiana's victim advocate privilege avoids Brady issues by excluding from its protection persons affiliated with the State; to be sure, it seems to support compliance with the obligations imposed by Brady.

In sum, "[t]he dispositive issue in Ritchie was the government's obligation under the Due Process Clause to provide discovery of records in its possession containing evidence both favorable to the accused and material to guilt or punishment." Commonwealth v. Barroso, 122 S.W.3d 554, 559 (Ky. 2003) (emphasis in original deleted).

For many courts then, a finding that a privilege does not protect the government from disclosure ends the inquiry – Ritchie does not require an in camera review. But at least one court has not stopped there. In a case where the information was not in the government's possession, the Kentucky Supreme Court analyzed the privilege with reference to the Compulsory Process Clause, an analysis expressly not considered by the Supreme Court in Ritchie. Id. at 563 (concluding that criminal defendants have a right under the Compulsory Process Clause to obtain and present exculpatory evidence in the possession of a third party that would otherwise be privileged); see Ritchie, 480 U.S. at 56 ("[W]e need not decide today whether and how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment."). Although

13

we are reluctant to engage in an uncertain Compulsory Process Clause analysis, we agree with the Kentucky Supreme Court that our inquiry into defendants' constitutional rights should not end here. See also Pinder, 678 So. 2d at 414-15 (unqualified privilege held by nongovernment actors more properly analyzed under a more general concept of due process). Thus, our analysis of Fromme's constitutional rights continues below.

## IV-C

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Kubsch v. State, 784 N.E.2d 905, 923-24 (Ind. 2003) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)) (internal quotation marks omitted). That being said, we think that other Supreme Court case law supports our conclusion that Fromme does not have a constitutional right to Crisis Connection's records. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977) (noting that "[t]here is no general constitutional right to discovery in a criminal case"); see also State ex rel. Grammer v. Tippecanoe Circuit Court, 268 Ind. 650, 652, 377 N.E.2d 1359, 1361 (1978) ("[D]iscovery in favor of a criminal defendant is not required by the constitutional guarantee of due process." (emphasis in original) (citing Wardius v. Oregon, 412 U.S. 470 (1973))).

In determining whether Fromme's constitutional right to present a complete defense would be violated by nondisclosure of Crisis Connection's records, we weigh the interest advanced by Indiana's victim advocate privilege "against the inroads of such a privilege on the fair administration of criminal justice." United States v. Nixon, 418 U.S. 683, 711-712 (1974); see also Crane v. Kentucky, 476 U.S. 683, 690-91 (1986) (weighing the potential value of the exculpatory evidence against the justification, or lack thereof, for its exclusion); Roviaro v. United States, 353 U.S. 53, 62 (1957) ("We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.").

14

Indiana's victim advocate privilege applies to victim service providers that "provide services for emotional and psychological conditions" to victims of domestic violence and sexual assault. I.C. § 35-37-6-5. As recognized by the Supreme Court in Jaffee v. Redmond, "[e]ffective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." 518 U.S. 1, 10 (1996). Even "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." Id. (footnote omitted). For these reasons, the Jaffee Court recognized a federal psychotherapist-patient privilege that covers confidential communications made to licensed psychiatrists, psychologists, and social workers in the course of psychotherapy. Id. at 15.

Although the Jaffee Court did not consider the application of the psychotherapist-patient privilege in the criminal context,[16] we think its rationale strongly supports Indiana's interest in maintaining the confidentiality of records protected by the victim advocate privilege. Notably, the Jaffee Court rejected a balancing approach to the application of the psychotherapist-patient privilege: "Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relevant importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." Id. at 17. In comparison, if the records protected by Indiana's victim advocate privilege were subject to even an in camera review in cases like the present one, "confidential conversations between [victim advocates and victims] would surely be chilled, particularly when it is obvious that the circumstances that [gave] rise to the need for treatment will probably result in litigation." Id. at 11-12. Rather, "if the purpose of [Indiana's victim advocate privilege] is to be served, the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected.'" Id. at 18 (quoting Upjohn Co. v. United States, 449 U.S. 383, 393 (1981)). In cases like the present one, the rule that best serves the policies supporting Indiana's victim advo-

---

[16] We recognize that courts have differed as to whether criminal defendants' rights trump the federal psychotherapist privilege. For a summary of some of those decisions differing on this issue, see Shrader, 716 F. Supp. 2d at 471-72. On a related note, a petition for a writ of certiorari was recently denied by the U.S. Supreme Court on the issue of whether the attorney-client privilege must give way to protect a criminal defendant's constitutional rights. Murdoch v. Castro, 609 F.3d 983, 995-96 (9th Cir. 2010), cert. denied, No. 10-809, 2011 U.S. LEXIS 3681, 2011 WL 1832839 (May 16, 2011); cf. Swidler & Berlin v. United States, 524 U.S. 399, 408-09 (1998) (noting that there is no case authority for the proposition that the attorney client privilege applies differently in criminal and civil cases).

cate privilege is one that <u>generally</u> prohibits disclosure for even <u>in</u> <u>camera</u> review of confidential information.

Nor do we think that the strong interest in maintaining the confidentiality of these records in this case is outweighed by the fair administration of criminal justice. Fromme's right to a fair trial and right to present a complete defense is well-protected by his extensive access to other sources of evidence. <u>See</u> <u>In re WTHR-TV</u>, 693 N.E.2d at 5-6 (noting that the Indiana Rules of Trial Procedure provide criminal defendants with liberal discovery). And, considering that the primary function of groups protected by the victim advocate privilege is not to investigate crimes but rather to provide counseling for emotional and psychological needs, we think it unlikely that Fromme would find evidence in Crisis Connection's records that is not available to him by way of other discovery sources. <u>See</u> <u>Pinder</u>, 678 So. 2d at 415-16 ("Given the function of counseling, it is improbable that an <u>in</u> <u>camera</u> inspection of counseling records would uncover information critical to the defense, irreplaceable by other means."); <u>Commonwealth v. Kennedy</u>, 604 A.2d 1036, 1046 (Pa. Super. Ct. 1992) ("The compelling interest in allowing this rehabilitative process to occur in private is not to build a case for the prosecution, but rather to deal with the trauma of the assault and begin the healing process."); <u>cf.</u> <u>Ritchie</u>, 480 U.S. at 43 (providing that CYS's function was to investigate suspected cases of mistreatment and neglect). Further, Indiana's victim advocate privilege applies to both the prosecution and defense; it does not unfairly favor one side over the other. <u>Cf.</u> <u>Wardius v. Oregon</u>, 412 U.S. 470, 475 (1973) ("[I]n the absence of a strong showing of state interests to the contrary, discovery must be a two-way street.").

In sum, by providing a complete ban to disclosure in cases like the present one, Indiana's victim advocate privilege advances the State's compelling interest in maintaining the confidentiality of information gathered in the course of serving emotional and psychological needs of victims of domestic violence and sexual abuse. For the reasons stated above, this interest is not outweighed by Fromme's right to present a complete defense. Accordingly, Fromme does not have a constitutional right to an <u>in</u> <u>camera</u> review of Crisis Connection's records. In the absence of a violation of Fromme's constitutional rights, we apply the victim advocate privilege as provided by the General Assembly.

## Conclusion

We reverse the order of the trial court and remand for proceedings consistent with this opinion.

Shepard, C.J., and Dickson, Rucker, and David, JJ., concur.