## FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE NON-PARTY
INDIANA BOARD OF PHARMACY:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHY BRADLEY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NICHOLAS WILLIAMS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1103-CR-266 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

INTERLOCUTORY APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Charles A. Wiles, Senior Judge
Cause No. 49F08-0906-FD-54517

**January 11, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Nicholas Williams was arrested and charged with possessing the controlled substances methadone and alprazolam. The existence of a valid prescription is a defense to the crime of possession of a controlled substance. Because Williams initially could not remember the names of the doctors who had allegedly prescribed those substances or the pharmacies at which the prescriptions were allegedly filled, his counsel served a subpoena on the Indiana Board of Pharmacy ("the Board"), which maintains a computerized database used to monitor the prescription of controlled substances, requesting a certified copy of "any and all" of Williams's prescription records.

The Board filed a motion to quash the subpoena, asserting that the requested information was confidential pursuant to statute and therefore could not be released to Williams. At a hearing on the motion to quash, Williams testified that he now remembered the names of the doctors who allegedly had prescribed the methadone and alprazolam but could not remember where the prescriptions allegedly had been filled. The trial court granted the Board's motion to quash and certified its ruling for interlocutory appeal.

On appeal, Williams contends that the trial court erred in granting the Board's motion to quash his subpoena, arguing that his prescription records are not privileged, that his request was sufficiently particular, and that the records are material to his defense. The Board contends that Williams's prescription records may be released only to persons specified in the applicable statute, that his request is not sufficiently particular, that he could

obtain the requested information from his doctors, and that the Board has a paramount interest in not disclosing that information.

We conclude that the confidentiality provisions of the applicable statute were enacted to protect Williams's physician-patient privilege and pharmacist-patient privilege and that he has waived those privileges by requesting his prescription records in the exercise of his constitutional right to present a complete defense to the charged crimes. We further conclude that Williams's request is sufficiently particular, that the requested information is material to his defense, that not all the information requested would be available from his doctors, and that the Board has failed to show a paramount interest in not disclosing the information. Therefore, we reverse the trial court's ruling and remand for further proceedings consistent with this opinion.

**Facts and Procedural History**

According to the probable cause affidavit filed in this case, Indianapolis Metropolitan Police officers arrested Williams for public intoxication and possession of a controlled substance on June 8, 2009. The officers found several pill bottles on the floor of Williams's car and a baggie of yellow pills in his pocket. A preliminary laboratory report indicated that twenty-five pills tested positive for methadone and nine pills tested positive for alprazolam.[1] On June 9, 2009, the State charged Williams with two counts of class D felony possession of

---

[1] The probable cause affidavit indicates that some of the pills were found in the baggie and some in the pill bottles in Williams's car. *See* Appellant's App. at 21 ("Officer Mauer transported all of the pills found on Nicholas and in the vehicle to the property room.").

3

a controlled substance[2] and one count of class B misdemeanor public intoxication. The possession statute provides that "[a] person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses a controlled substance (pure or adulterated) in schedule I, II, III, or IV … commits possession of a controlled substance, a Class D felony." The existence of a valid prescription for a controlled substance is a defense to the crime of possession which the defendant has the burden of proving by a preponderance of the evidence. *Schuller v. State*, 625 N.E.2d 1243, 1246 (Ind. Ct. App. 1993).

On October 22, 2010, Williams served a request for production of documents by a non-party and a subpoena duces tecum on INSPECT RX, requesting a certified copy of "any and all" of his prescription records and listing his date of birth and social security number. Appellant's App. at 44. INSPECT is the Indiana Scheduled Prescription Electronic Collection and Tracking program, which is administered by the Board pursuant to statute for the purpose of monitoring the prescription of controlled substances. As part of the INSPECT program, the Board maintains a computerized database compiled from information that is required by law to be transmitted by controlled substance prescription dispensers, including a prescription recipient's name, identification number, date of birth, and method of payment for the controlled substance dispensed; the dates a controlled substance is dispensed, as well as the quantities and number of days supply; and the United States Drug Enforcement

---

[2] The charging information appears to list methadone as a schedule I controlled substance, but it is actually a schedule II controlled substance. Ind. Code § 35-48-2-6(c).

4

Agency registration number for both the prescriber and the dispenser of the controlled substance. Ind. Code §§ 35-48-7-8.1, -10.1.

On November 18, 2010, the Board filed a motion to quash the subpoena that reads in pertinent part as follows:

> 5. Defendants' [sic] Subpoena is improper in that it seeks to force the Non-Party to provide information and documentation that is confidential pursuant to statute.
>
> 6. Indiana Code section 35-48-7-11.1 provides that the requested information and documentation is confidential, and is only available for release to certain classes of persons.
>
> 7. The information can be released to persons who are authorized to receive, process, or store the information pursuant to Indiana Code section 35-48-7-11.1(c).
>
> 8. The information can also be released to personnel who are investigating claims against a medical professional regarding the prescribing of controlled substances or to a similar body in another state pursuant to Indiana Code section 35-48-7-11.1(d).
>
> 9. Defendant has offered nothing to indicate that he belongs to any of the classes of persons eligible to receive the confidential information and documentation, and, therefore, Defendant's Subpoena should be quashed.

Appellant's App. at 49.

On December 2, 2010, the trial court held a hearing on the motion to quash at which Williams did not appear but was represented by counsel. Defense counsel remarked that "a good number of clients with mental health diagnoses and treatments and medications don't remember where they've had prescriptions filled so it does frustrate our effort to produce prescriptions when there's a charge of possessing a controlled substance without a valid prescription." Tr. at 3-4. Defense counsel then stated his "good faith belief that there will be

5

a valid prescription in that database that [he would] know what doctor and what pharmacy to particularly subpoena." *Id*. at 8. The trial court took the matter under advisement.

On February 7, 2011, the court held another hearing on the motion to quash at which Williams appeared and was represented by counsel. Williams testified under oath that he was able to remember the names of the two doctors who had prescribed the methadone and alprazolam but was unable to remember the pharmacies at which the prescriptions had been filled. *See id*. at 23 ("I don't know the exact location but it's either Walgreens or CVS."). When the trial court suggested that Williams could subpoena the doctors, defense counsel said,

> [W]ith this one subpoena through the Board of Pharmacy I can obtain the doctor and the pharmacy and since those are entered by the doctors and pharmacies into that database I would not need to independently subpoena them. I would have all of [Williams's] records for all medications. There is a separate file that the court would note that I did not file the subpoena on yet, file ending 976 in which he is charged with another Possession of a Controlled Substance as a Class D felony and it would allow me to dispose of both of these cases if I had that one prescription record. So it doesn't ultimately resolve the issue, if I can issue one subpoena then I can take care of multiple cases. And it's still our position that we're entitled to request that information by subpoena, by third party subpoena, and that I'm entitled to it because it's my client's medical records, his own records.

*Id*. at 24. The trial court summarily granted the Board's motion to quash and certified its ruling for interlocutory appeal. On May 6, 2011, we accepted jurisdiction of this appeal.

**Discussion and Decision**

Williams contends that the trial court erred in granting the Board's motion to quash his subpoena. "A trial court has broad discretion with regard to rulings on discovery matters based upon its duties to promote discovery of the truth and to guide and control the

6

proceedings." *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005), *trans. denied* (2006). Consequently, such rulings will be reversed only for an abuse of discretion, which occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Id.*

> Due to the fact-sensitive nature of discovery matters, the trial court's ruling is cloaked in a strong presumption of correctness on appeal. We may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though this was not the reason enunciated by the trial court.

*Id.* (citations and quotation marks omitted).

In the absence of a conflicting criminal rule, the Indiana Rules of Trial Procedure generally apply to criminal proceedings. *State v. Cline (In re WTHR-TV)*, 693 N.E.2d 1, 5 (Ind. 1998) (citing Ind. Criminal Rule 21). "Trial Rule 34 enables parties to a lawsuit to request information or material directly from both parties and non-parties." *Id.* The scope of discovery is governed by Trial Rule 26(B), which reads in pertinent part as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Ind. Trial Rule 26(B)(1).

The Indiana Supreme Court has established the following three-part test "for the discoverability of records by a criminal defendant in certain circumstances":

7

(1) there must be sufficient designation of the items sought to be discovered (particularity); (2) the requested items must be material to the defense (relevance or materiality); and (3) if the first two requirements are met, the trial court must grant the request unless there is a showing of "paramount interest" in nondisclosure.

*In re Crisis Connection, Inc.*, 949 N.E.2d 789, 794 (Ind. 2011). This test does not apply, however, "when the question is the discoverability of information that is otherwise privileged." *Id.*

Indiana Code Section 35-48-7-11.1(a) provides that the information received by the INSPECT program from controlled substance dispensers is "confidential." The rest of the statute reads in relevant part as follows:

> (b) The board shall carry out a program to protect the confidentiality of the information described in subsection (a). The board may disclose the information to another person only under subsection (c), (d), or (g).

> (c) The board may disclose confidential information described in subsection (a) to any person who is authorized to engage in receiving, processing, or storing the information.

> (d) Except as provided in subsections (e) and (f), the board may release confidential information described in subsection (a) to the following persons:

>> (1) A member of the board or another governing body that licenses practitioners and is engaged in an investigation, an adjudication, or a prosecution of a violation under any state or federal law that involves a controlled substance.

>> (2) An investigator for the consumer protection division of the office of the attorney general, a prosecuting attorney, the attorney general, a deputy attorney general, or an investigator from the office of the attorney general, who is engaged in:

>>> (A) an investigation;

>>> (B) an adjudication; or

(C) a prosecution;

of a violation under any state or federal law that involves a controlled substance.

(3) A law enforcement officer who is an employee of:

(A) a local, state, or federal law enforcement agency; or

(B) an entity that regulates controlled substances or enforces controlled substances rules or laws in another state;

that is certified to receive information from the INSPECT program.

(4) A practitioner or practitioner's agent certified to receive information from the INSPECT program.

(5) A controlled substance monitoring program in another state with which Indiana has established an interoperability agreement.

(6) The state toxicologist.

(7) A certified representative of the Medicaid retrospective and prospective drug utilization review program.

(8) A substance abuse assistance program for a licensed health care provider who:

(A) has prescriptive authority under IC 25; and

(B) is participating in the assistance program.

(e) Information provided to an individual under:

(1) subsection (d)(3) is limited to information:

(A) concerning an individual or proceeding involving the unlawful diversion or misuse of a schedule II, III, IV, or V controlled substance; and

(B) that will assist in an investigation or proceeding; and

9

(2) subsection (d)(4) may be released only for the purpose of:

  (A) providing medical or pharmaceutical treatment; or

  (B) evaluating the need for providing medical or pharmaceutical treatment to a patient.

(f) Before the board releases confidential information under subsection (d), the applicant must be approved by the INSPECT program in a manner prescribed by the board.

(g) The board may release to:

(1) a member of the board or another governing body that licenses practitioners;

(2) an investigator for the consumer protection division of the office of the attorney general, a prosecuting attorney, the attorney general, a deputy attorney general, or an investigator from the office of the attorney general; or

(3) a law enforcement officer who is:

  (A) authorized by the state police department to receive the type of information released; and

  (B) approved by the board to receive the type of information released;

confidential information generated from computer records that identifies practitioners who are prescribing or dispensing large quantities of a controlled substance.

(h) The information described in subsection (g) may not be released until it has been reviewed by:

(1) a member of the board who is licensed in the same profession as the prescribing or dispensing practitioner identified by the data; or

(2) the board's designee;

10

and until that member or the designee has certified that further investigation is warranted. However, failure to comply with this subsection does not invalidate the use of any evidence that is otherwise admissible in a proceeding described in subsection (i).

(i) An investigator or a law enforcement officer receiving confidential information under subsection (c), (d), or (g) may disclose the information to a law enforcement officer or an attorney for the office of the attorney general for use as evidence in the following:

(1) A proceeding under IC 16-42-20.

(2) A proceeding under any state or federal law that involves a controlled substance.

(3) A criminal proceeding or a proceeding in juvenile court that involves a controlled substance.

Ind. Code § 35-48-7-11.1.

Conspicuously absent from the list of persons specifically authorized to receive information from the INSPECT database is the person for whom a controlled substance is prescribed and dispensed – in other words, the patient. To the extent that the confidential information in the database might also be considered privileged, by virtue of either the physician-patient privilege or the pharmacist-patient privilege,[3] that privilege inures to the patient, not the Board (or the physician or the pharmacist, for that matter). Here, Williams's

---

[3] *See*, *e.g.*, Ind. Code §§ 34-46-3-1 ("Except as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications: … (2) Physicians, as to matters communicated to them by patients, in the course of their professional business, or advice given in such cases."), 25-26-13-15 ("(a) A pharmacist shall hold in strictest confidence all prescriptions, drug orders, records, and patient information. He may divulge such information only when it is in the best interest of the patient or when requested by the board or its representatives or by a law enforcement officer charged with the enforcement of laws pertaining to drugs or devices or the practice of pharmacy. (b) A person who has knowledge by virtue of his office of any prescription drug order, record, or patient information may not divulge such information except in connection with a criminal prosecution or proceeding or a proceeding before the board, to which the person to whom the information relates is a party.").

11

request for information from the database regarding his prescriptions amounts to a waiver of any privilege, and therefore we conclude that the aforementioned three-part test for discoverability applies in this case. *See Collins v. Bair*, 256 Ind. 230, 238, 268 N.E.2d 95, 99 (1971) ("a patient waives his physician-patient privilege by pursuing a course of conduct inconsistent with a continued observance of the privilege"); *Ley v. Blose*, 698 N.E.2d 381, 384 (Ind. Ct. App. 1998) (noting that physician-patient privilege "is not absolute, and may be waived by the patient either expressly or by implication").

"Ultimately, the three-part test for discoverable information in a criminal proceeding involves balancing 'the relevance of the material, its availability from other sources, the burden of compliance measured in terms of difficulty, and the nature and importance of the interests invaded.'" *Williams v. State*, 819 N.E.2d 381, 385 (Ind. Ct. App. 2004) (quoting *Cline*, 693 N.E.2d at 7), *trans. denied* (2005). Regarding the first part, particularity, "the request must enable the subpoenaed party to identify what is sought and allow the trial court to determine whether there has been sufficient compliance with the request." *Id.* Particularity also requires a showing that the information is not readily available elsewhere. *Cline*, 693 N.E.2d at 7. "[W]hat constitutes reasonable particularity will depend on the facts of each individual case, the crime charged, the nature of the items sought to be discovered, the degree of discovery of other items of information, the nature of the defense, etc." *Id.* at 6-7 (citation and quotation marks omitted). "[T]he particularity requirement is not to be construed strictly against the defendant but should be administered so as to maximize pre-

trial discovery and the benefits to the judicial system which flow therefrom." *Crawford v. State*, 948 N.E.2d 1165, 1169 (Ind. 2011) (citation and quotation marks omitted).

The Board contends that Williams's request for "any and all" of his prescription records is "overly broad." Appellee's Br. at 8. Given that the INSPECT database is computerized, one would reasonably expect that producing "any and all" of Williams's prescription records would not be especially burdensome. As such, the scope of his request is not particularly concerning here. The Board also contends that Williams "can obtain the information regarding any legally obtained prescriptions from the treating physicians in this matter." *Id*. We disagree. As mentioned earlier, Williams could not remember the specific pharmacies that allegedly dispensed his prescriptions, and thus obtaining his records from the INSPECT database would verify whether those prescriptions were actually dispensed to him. There is no indication that such information would be available from his treating physicians.

Regarding the second part of the three-part test, "[a]n item is 'material' if it appears that it might benefit the preparation of the defendant's case. The relevance of some information or items may be self-evident." *Cline*, 693 N.E.2d at 7 (citation omitted). Here, the relevance of Williams's prescription records is indeed self-evident, in that they would establish (or at least help to establish) a complete defense to the two possession charges.

Having concluded that Williams has made a sufficient showing of both particularity and materiality, we now address whether the Board has shown a paramount interest in the nondisclosure of Williams's prescription records. "Whether a sufficient interest has been shown to prevent discovery will depend upon the type of interest put forth and the category

13

of information sought. A legitimate interest in keeping the information or items confidential, for example, may suffice to deny discovery." *Id*. (citation and quotation marks omitted). Here, the Board emphasizes the confidentiality provisions of Indiana Code Section 35-48-7-11.1 and says,

> The information may only be disclosed to those persons or agencies delineated in the statute. Ind. Code § 35-48-7-11.1(b). There is no exception for disclosure by the Board to parties not listed in the statute. Moreover, it is a criminal offense for anyone to disclose information in violation of the statute. Ind. Code § 35-48-7-14.[4]

Appellee's Br. at 5.

It seems obvious that the confidentiality provisions of Indiana Code Section 35-48-7-11.1 were enacted to uphold the protections of the physician-patient privilege and the pharmacist-patient privilege. Where, as here, a patient seeks to waive those privileges for the purpose of exercising his or her constitutional right to present a complete defense to charges in a criminal case, both the rationale for and the Board's interest in keeping the patient's prescription records confidential evaporate. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete

---

[4] *See* Ind. Code § 35-48-7-14 ("A person who knowingly or intentionally violates this chapter commits a Class A misdemeanor.").

14

defense.") (citations and quotation marks omitted).[5]  Therefore, we conclude that the trial

court abused its discretion in granting the Board's motion to quash Williams's subpoena and

reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BAILEY, J., and MATHIAS, J., concur.

---

[5] The Board argues that it

> has been provided with no mechanism by the legislature for disclosing information in the INSPECT database directly to a court or third parties not listed in the statute. There is no way for the Board to know when it receives a subpoena whether the information being sought is indeed related to an individual seeking his own records or the records of a third-party, nor is there a blanket exemption for release of the records to a third party if there is a criminal proceeding. It places the Board in an untenable and burdensome position of having to challenge in the trial courts all subpoenas issued to it where information is sought by a party not listed in the statute to ensure that it does not violate the statute and commit a possible criminal offense.

Appellee's Br. at 7.  Williams points out that his subpoena and discovery request are captioned with his name, and thus "it is apparent from the face of these documents that Williams is seeking his own records and not those of another person." Appellant's Reply Br. at 3.  As for the Board's fear of being placed in "an untenable and burdensome position" by similar subpoenas, we note that the Board could petition the legislature to create a blanket exemption for release of prescription records to third parties in criminal proceedings (such as the one applicable to pharmacists under Indiana Code Section 25-26-13-15) and adopt its own rules for handling such releases. *See* Ind. Code §§ 35-48-7-12.1(a) ("The board shall adopt rules under IC 4-22-2 to implement this chapter ...."), -11.1(f) ("Before the board releases confidential information under subsection (d), the applicant must be approved by the INSPECT program in a manner prescribed by the board.").