**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL P. QUIRK**
Public Defender
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CURTIS B. LAY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  18A02-1111-CR-1074 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Marianne L. Vorhees, Judge
Cause No.  18C01-1101-FA-2

**September 7, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Curtis Lay appeals his conviction for dealing in a schedule III controlled substance as a class A felony.[1]

We affirm.

## ISSUE

Whether the trial court improperly denied Lay's motion for discovery.

## FACTS[2]

At some point prior to December 9, 2010, confidential informants purchased cocaine from Jason Jones. Subsequently, Detective Nathan Sloan, of the Muncie Police Department's Drug Unit, approached Jones at the office of Jones's probation officer and proposed that he become a confidential informant to "work off his charges[.]" (Tr. 113). Jones agreed and "offered" Lay as a potential target in a controlled drug buy. (Tr. 114). In the meantime, under Detective Sloan's supervision, Jones made three controlled drug buys from other individuals.

On December 9, 2010, Detective Sloan met with Jones prior to conducting a controlled drug buy from Lay. Detective Sloan searched Jones and Jones's vehicle to confirm that Jones had no illegal contraband or narcotics and equipped Jones's vehicle

---

[1] Ind. Code § 35-48-4-2.

[2] We remind Lay's counsel that pursuant to Rule 46(A)(6)(a) of the Indiana Rules of Appellate Procedure, the facts contained in the Statement of Facts "shall be supported by page references to the Record on Appeal or Appendix . . . ."

with surveillance equipment, with which the officers could videotape, record, and listen to the transaction as it happened. Detective Sloan also provided Jones with buy money.

As an officer followed in an unmarked vehicle and maintained surveillance of Jones, Jones drove to a residence located at 1304 East 9th Street, which was located less than three hundred feet from a city park. Detective Sloan separately parked his unmarked vehicle approximately one-half block away from the residence. He observed Lay leave the residence and enter the passenger side of Jones's vehicle.

During the drug buy, Detective Sloan monitored the conversation between Jones and Lay; he recognized Lay's voice because he had interviewed Lay "[e]xtensively" in the past. (Tr. 123). The surveillance equipment also videotaped Lay and Jones during the drug buy. Still photographs later made of the videos clearly depicted Lay as he exited Jones's vehicle after the transaction.

After the controlled drug buy, Officer Jeff Pease followed Jones to a predetermined location, where Jones gave Officer Pease the recording equipment and eight pills wrapped in newspaper. Tests later revealed that the pills contained hydrocodone, a schedule III controlled substance.

On January 19, 2011, the State charged Lay with dealing in a schedule III controlled substance as a class A felony. The trial court commenced a two-day jury trial on September 28, 2011.

Upon cross-examination, Detective Sloan testified that the Muncie Police Department "had some controlled purchases on" Jones and that he was "ninety-nine

3

percent [] sure it was [for] cocaine . . . ." (Tr. 111). When asked "where was that information located," Detective Sloan testified that it was in a file in his office. (Tr. 111). Lay's counsel then requested that the file be provided to him. Specifically, Lay sought "the notes and everything on what [Jones] was charged with and what he was caught doing by the drug task force . . . ." (Tr. 165). The State objected, asserting that "it would be proper to request discovery." (Tr. 111).

After the trial court heard counsels' arguments on Lay's request for the file, the trial court ordered the State, which had been unaware of the file's existence prior to Detective Sloan's testimony, to "look at the file, review it, and consider it a request for production of that file." (Tr. 181). The trial court then instructed the State to "make a verbal motion to quash" if the State opined that the information in the file was not discoverable. (Tr. 181).

After reviewing the file, the State informed the trial court that it consisted of "three [] files where someone else made [controlled drug] buys from Jason Jones. And there are three [] files where Jason Jones made [controlled drug] buys from someone else." (Tr. 187). According to the State, the file did not contain any information regarding Jones's prior convictions but did contain information about confidential informants who were "completely unrelated to this case" and that the information was privileged. (Tr. 183). The State therefore made a motion to quash discovery of the file. Finding that disclosure of the file "could lead to the identity of confidential informants

4

who are protected in Indiana," the trial court sustained the State's motion to quash. (Tr. 196).

Lay subsequently examined Jones as a defense witness. Jones testified that when he first encountered Detective Sloan and discussed becoming a confidential informant, Detective Sloan informed Jones that "they had [him] in all types of stuff" such as "[s]elling drugs." (Tr. 377). Jones further testified that Detective Sloan told him that "[e]ither [he] get[s] some buys off some people or [he is] going to do [his] time" for dealing in cocaine. (Tr. 379). Upon cross-examination, Jones testified that Lay sold several pills to him during the controlled drug buy.

The jury found Lay guilty as charged. Following a sentencing hearing on October 31, 2011, the trial court sentenced Lay to thirty (30) years, executed at the Department of Correction.

DECISION

Lay asserts that the trial court abused its discretion in denying his motion for discovery of Detective Sloan's file. He argues that "[b]y not requiring the State to turn over this evidence the Trial Court made it impossible for [Lay] to make crucial arguments" and has "encouraged the practice of hiding evidence and creation of 'secret files' by officers." Lay's Br. at 7.

> A trial court has broad discretion with regard to rulings on discovery matters based upon its duties to promote discovery of the truth and to guide and control the proceedings. Consequently, such rulings will be reversed only for an abuse of discretion, which occurs when the trial court's decision

5

is against the logic and effect of the facts and circumstances before the court.

*Williams v. State*, 959 N.E.2d 360, 364-65 (Ind. Ct. App. 2012) (internal citations omitted). Discovery matters are fact-sensitive; accordingly, rulings on such matters are cloaked in a strong presumption of correctness on appeal. *Id*. at 365. We therefore may affirm a trial court's ruling if it is sustainable on any legal basis in the record. *Id*. "'When alleging trial court error and arguing for reversal, an appellant must show error and *impact upon the appellant's substantial rights to prevail*.'" *Robinson v. State*, 682 N.E.2d 806, 808 (Ind. Ct. App. 1997) (emphasis added) (quoting *Hardin v. State*, 611 N.E.2d 123, 132 (Ind. 1993)); *see also* T.R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

In criminal proceedings, we look to the Indiana Rules of Trial Procedure for guidance on discovery matters. *See* Ind. Crim. Rule 21 ("The Indiana rules of trial . . . procedure shall apply to all criminal proceedings so far as they are not in conflict with any specific rule adopted . . . for the conduct of criminal proceedings."). Indiana Trial Rule 26(B) governs the scope of discovery, providing, in pertinent part, as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information

6

sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

T.R. 26(B)(1).

Lay cites to the three-part test established by our supreme court for determining whether criminal defendants may discover records in certain circumstances:

> (1) there must be sufficient designation of the items sought to be discovered (particularity); (2) the requested items must be material to the defense (relevance or materiality); and (3) if the first two requirements are met, the trial court must grant the request unless there is a showing of "paramount interest" in nondisclosure.

*In re Crisis Connection, Inc.*, 949 N.E.2d 789, 794 (Ind. 2011). This test, however, applies only to <u>nonprivileged</u> information. *Id.*

Privileged matter is generally not discoverable. T.R. 26(B). Specifically, documents prepared in anticipation of litigation or for trial are not discoverable except upon a showing that a party has substantial need of the materials in the preparation of his case and that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means. T.R. 26(B)(3). Police reports prepared for prosecuting attorneys fit within this exception. *State ex. rel. Keaton v. Circuit Court of Rush County*, 475 N.E.2d 1146, 1147-48 (Ind. 1985).

In addition, there is a general policy "to prevent disclosure of an informant's identity unless the defendant can demonstrate that disclosure is relevant and helpful to his defense or is necessary for a fair trial." *Heyen v. State*, 936 N.E.2d 294, 300 (Ind. Ct. App. 2010), *trans. denied*. The defendant bears the burden of demonstrating his need for

disclosure. *Id.* An informant's identity shall not be disclosed to permit a mere "fishing expedition." *Shell v. State*, 927 N.E.2d 413, 420 (Ind. Ct. App. 2010).

Here, Lay has not shown a substantial need for the information contained in the police file. Furthermore, we cannot say that Lay met the burden of demonstrating his need for disclosure where the files (1) contained information regarding drug sales unrelated to the one at issue and (2) would have disclosed the names of confidential informants for no purpose other than to obtain "information regarding the State's main witness," Jones. Lay's Br. at 6. The record clearly shows that Lay knew of Jones's identity prior to the trial; thus, Lay had the opportunity to obtain information regarding Jones through other measures that would not have disclosed the identity of another informant. Accordingly, we find no abuse of discretion in the trial court denying Lay's motion for discovery of Detective Sloan's file.

Moreover, even if the trial court had erred in denying Lay's motion for discovery, such error would be harmless. Lay knew of Jones's identity and obtained information regarding Jones. Notably, Lay called Jones as a witness for the defense and extensively examined Jones, during which time Jones testified about his background, including his prior drug sales and how he became recruited as a confidential informant. Furthermore, the jury heard extensive testimony regarding the controlled drug buy between Jones and Lay. Thus, we cannot say that the alleged error affected Lay's substantial rights. *But cf. Owen v. State*, 406 N.E.2d 1249, 1250-51 (Ind. Ct. App. 1980) (stating that it is "not

possible to determine that the error was harmless" where the trial court denied the defendant's motion to depose a material witness).

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.