**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DAVID P. LYNCH**
Amy Noe Law
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| TRENT D. POPE, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No.  89A05-1307-CR-366 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Gregory A. Horn, Judge
Cause No. 89D02-1201-FB-7

**April 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Trent Pope appeals his conviction by jury of robbery as a Class B felony[1] as well as his adjudication as a habitual offender.[2]

We affirm.

**Issue**

The sole issue for our review is whether the trial court erred in admitting evidence.[3]

**Facts and Procedural History**

The facts most favorable to the verdict reveal that in the evening hours of March 5, 2013, Lawrence Burke picked up his friend Laura Ray, who sometimes spent the night at Burke's apartment, and Laura's daughter, Crystal. This was the first time Burke had met Crystal, who asked Burke to pick up Pope. This was also the first time Burke had met Pope. Burke drove Laura, Crystal, and Pope to his apartment. At approximately 1:00 the following morning, Burke allowed Crystal and Pope to borrow his 1993 green Honda Accord, which had a missing left front hubcap and a broken out driver's side passenger window that was covered with plastic tape. Crystal and Pope drove to a nearby Village Pantry. Pope parked the car and waited while Crystal went into the store and purchased a snack. Crystal asked the cashier if she was working alone and leaned over the counter to look into the open cash register after the cashier rang up her purchase.

---

[1] Ind. Code § 35-42-5-1.

[2] Ind. Code § 35-50-2-8.

[3] Pope also argues that "without the improperly admitted evidence," there is insufficient evidence to support his robbery conviction. However, because we find that the trial court did not err in admitting this evidence, we need not address this issue.

2

A few minutes after Crystal left the store, Pope entered it with a scarf covering his face. He was brandishing a gun. He took money from the cash register, told the cashier at gun point to lie face down on the ground, and fled the store. Pope and Crystal returned to Burke's apartment after the robbery. Burke, who had been drinking alcohol that night, did not remember letting Crystal and Pope in the apartment when they got back. Pope did not ask for permission to spend the night at Burke's apartment, and Burke extended no such invitation to Pope.

Immediately after the robbery, the Village Pantry cashier called 911. The cashier told the 911 operator that the robber was wearing a blue jacket with a noticeable tear. The cashier also explained that the robber had a scarf wrapped around his face and brandished a gun. Richmond Police Department Officer Jeffrey Carrico responded to a dispatch to the store where he watched interior and exterior surveillance videos. The exterior video of the parking lot showed a green car missing its left front hub cap. The car's rear driver's side window was also covered. Officer Carrico searched for the car and found it in the parking lot of Burke's apartment building.

The following morning, Officer Carter and Detective Legear knocked at Burke's door. When Burke opened the door, Officer Carter saw Pope run across the living room into a bedroom. Burke gave the officer and the detective consent to search his one-bedroom apartment. Officer Carter found Laura, Crystal, and Pope in the bedroom, where the officer noticed a jacket with a tear, a gun, and a scarf, all in plain view. Pope admitted that the jacket belonged to him. Detective Legear also noticed in plain view in the living room a pair

3

of shoes that were similar to those worn by the robber in the surveillance video. Pope was charged with robbery as a class B felony and was alleged to be a habitual offender. He filed a motion to suppress the evidence found in Burke's apartment. Specifically, Pope argued that the officers had neither a search warrant nor Pope's consent to the search or seizure. The trial court denied Pope's motion.

On the first day of trial, the prosecuting attorney asked Detective Legear to double-check the pocket of the jacket Pope was alleged to have worn during the robbery. Inside the jacket's pocket, Detective Legear found a traffic ticket that had been issued to Pope on December 26, 2011. Pope objected to the admission of the traffic ticket based on its untimely discovery. The trial court overruled Pope's objection and admitted the ticket into evidence.

The trial court also admitted into evidence the jacket with the tear, the scarf, and shoes found in Burke's apartment. The jury convicted Pope of robbery as a class B felony, and he admitted his status as a habitual offender. He now appeals.

**Discussion and Decision**

Pope argues that the trial court erred in admitting evidence. The admissibility of evidence is within the sound discretion of the trial court and will not be disturbed without a showing of an abuse of that discretion. Matson v. State, 844 N.E.2d 566, 570 (Ind. Ct. App. 2006), trans. denied. We examine the evidence most favorable to the ruling along with any uncontradicted evidence. Id. We do not reweigh the evidence or judge witness credibility. Id.

4

The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures performed by the government. Malone v. State, 882 N.E.2d 784, 786 (Ind. Ct. App. 2008). Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. Id. When a search or seizure is conducted without a warrant, the State bears the burden of proving that an exception to the warrant requirement existed at the time of the search or seizure. Id.

Here, Pope argues that the search and seizure of his property from Burke's apartment living room and bedroom, including the gun, jacket, scarf, and shoes, were unreasonable under the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution, and that the trial court abused its discretion by allowing the evidence to be admitted. The State responds that Pope lacked an expectation of privacy in Burke's apartment living room and bedroom.

A defendant must have a legitimate expectation of privacy in the premises that is the subject of the search before he can challenge the search as unconstitutional. Matson, 844 N.E.2d at 570. An expectation of privacy gives rise to Fourth Amendment protection where the defendant had an actual or subjective expectation of privacy and the claimed exception is one which society recognizes as reasonable. Krise v. State, 746 N.E.2d 957, 969 (Ind. 2001). When the constitutionality of a search is challenged, the defendant has the burden of demonstrating a legitimate expectation of privacy in the premises searched. Matson, 844 N.E.2d at 570. An overnight guest has a legitimate expectation of privacy in the host's home

and may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the owner of the premises may not.  Id.

Here, Pope had just met Burke, and this was Pope's first visit to Burke's apartment. Pope did not ask for permission to spend the night at Burke's apartment, and Burke extended no such invitation to Pope.  Pope fled to Burke's bedroom only after the police officers knocked at the front door.  Pope did not have an expectation of privacy in Burke's apartment living room or bedroom.

We further note that even if Pope had a legitimate expectation of privacy in Burke's apartment, his argument would fail because Burke consented to the search, and the evidence about which Pope complains was found in plain view.  One of the well-recognized exceptions to the warrant requirement is a voluntary and knowing consent to a search. Temperly v. State, 933 N.E.2d 558, 563 (Ind. Ct. App. 2010), trans. denied.  The consent need not be given by the subject of the search, but may be given by a third person who has authority over the premises.  Primus v. State, 813 N.E.2d 370, 374 (Ind. Ct. App. 2004). Here, Burke had the authority to consent to a search of his apartment.

Further, under the plain view doctrine, if the police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. Minnesota v. Dickerson, 508 U.S. 366, 375 (1993).  The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable if there is probable cause to associate the property with criminal activity.  Texas v. Brown, 460 U.S. 730, 741-42 (1983).

6

Probable cause is a "flexible, common-sense standard" requiring that the facts available to an officer would warrant a man of reasonable caution to believe that an item may be contraband and does not require any showing that the belief is correct or even that it is more likely true than false. Id. at 742. See also State v. Figgures, 839 N.E.2d 772, 779 (Ind. Ct. App. 2005), trans. denied, (stating that a probability that incriminating evidence is involved is all that is required).

Here, based on the cashier's description of the robber as well as the surveillance videos, the officers knew what the robber wore and that he was carrying a gun. The officers therefore had probable cause to associate the scarf, torn jacket, shoes, and gun with the Village Pantry robbery. We therefore agree with the State that the seizure of these items in plain view did not offend the Fourth Amendment, and the trial court did not err in admitting them into evidence.

Pope also argues that the search and seizure of these items violated his rights under the Indiana Constitution. Although the language of Article I, Section 11 of the Indiana Constitution tracks the language of the Fourth Amendment, Indiana has expressly rejected the expectation of privacy as a test of the reasonableness of the search. Litchfield v. State, 824 N.E.2d 356, 359 (Ind. 2005). Rather, the legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. Id. The totality of the circumstances requires consideration of 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the

degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of the law enforcement needs. Id. at 61.

Here, we agree with the State that there was a high degree of suspicion that the person who committed the robbery was inside Burke's apartment. The officers determined that the readily identifiable vehicle used in the robbery was registered to Burke. It was therefore reasonable for the officers to begin their investigation at Burke's apartment. The officers searched Burke's apartment after obtaining Burke's consent. Pope did not live in the apartment and had not even been invited to spend the night. He had just met Burke the night before. Finally, the law enforcement need was high because the officers were attempting to find the person who robbed the Village Pantry while armed with a weapon. We find no violation of the Indiana Constitution, and the trial court did not err when it admitted Pope's jacket, scarf, shoes, and gun into evidence.

Lastly, Pope argues that the trial court erred in admitting into evidence the traffic ticket that Officer Legear found during trial in the pocket of the jacket Pope was alleged to have worn during the robbery. Specifically, Pope contends that "[a]llowing its introduction violated the discovery order." Appellant's Br. p. 4.

The trial court is given broad discretion in discovery matters since it has the duty to promote the discovery of truth and guide the proceedings. Williams v. State, 959 N.E.2d 360, 364-65 (Ind. Ct. App. 2012). Such rulings will be reversed only for an abuse of discretion, which occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. Id. Due to the fact sensitive nature of discovery matters,

the trial court's ruling is cloaked in a strong presumption of correctness on appeal. Id. Further, if a remedial measure is warranted, a continuance is usually the proper remedy. Fleming v. State, 833 N.E.2d 84 (Ind. Ct. App. 2005). When a continuance is the appropriate remedy, a defendant will waive any alleged error regarding noncompliance with the trial court's discovery order by failing to request a continuance. Id. Here, Pope has waived appellate review of this issue because he failed to request a continuance.

Waiver notwithstanding, the improper admission of evidence is harmless error when the erroneously admitted evidence is merely cumulative of the other evidence before the trier of fact. Purvis v. State, 829 N.E.2d 572, 585 (Ind. Ct. App. 2005), trans. denied. Here, as the State points out, the relevance of the traffic ticket bearing Pope's name being found inside the jacket was to prove that that jacket belonged to Pope. However, Pope had already admitted that the jacket belonged to him. Because the traffic ticket was cumulative of other evidence, any error in admitting it was harmless. See id.

## Conclusion

The trial court did not err in admitting evidence.

Affirmed.

KIRSCH, J., and MAY, J., concur.