

FILED

Feb 20 2015, 9:57 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
NON-PARTY INDIANA BOARD OF
PHARMACY

Gregory F. Zoeller
Attorney General of Indiana

Dennis E. Mullen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Angela Lundy,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 20, 2015<br><br>Court of Appeals Case No.<br>49A02-1405-CR-307<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Jose Salinas, Judge<br><br>Case No. 49G14-1308-FD-52186 |

**Vaidik, Chief Judge.**

# Case Summary

[1]     Angela Lundy was charged with Class D felony possession of a controlled

substance. The existence of a valid prescription is a defense to this crime.

Lundy served a subpoena on non-party Indiana Board of Pharmacy ("the Board"), requesting a copy of her INSPECT report. As part of the INSPECT program, the Board compiles controlled-substance information into an online database.

[2] The Board filed a motion to quash the subpoena, claiming that the information was confidential pursuant to statute. The trial court granted the Board's motion because it found that Lundy had to make a threshold showing that she could not get her prescription records elsewhere before she was entitled to her INSPECT report from the Board. The trial court certified its ruling for interlocutory appeal.

[3] There is a three-part balancing test for discoverable information in a criminal proceeding, but the only consideration at issue here is particularity, which requires a showing that the information is not readily available elsewhere. The Board argues that because Lundy knew where she could "possibly" obtain her prescription records, they were readily available. "Readily available," however, does not equate to knowledge. That is, just because Lundy knew where she could "possibly" obtain her prescription records does not mean that they were "readily available" to her. In addition, the particularity requirement is not to be construed strictly against the defendant but should be administered so as to maximize pretrial discovery. Given that the Board does not challenge the other parts of the test, we conclude that the trial court abused its discretion in granting the Board's motion to quash Lundy's subpoena. We therefore reverse and remand this case to the trial court.

# Facts and Procedural History

[4] According to the probable-cause affidavit, on August 8, 2013, Indianapolis Metropolitan Police Department officers found a prescription bottle for alprazolam (Xanax) in Lundy's possession. The bottle contained one alprazolam pill but ten hydrocodone pills. Lundy was arrested for possession of the hydrocodone pills.

[5] The State charged Lundy with Class D felony possession of a controlled substance for possessing hydrocodone—a Schedule II drug—without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice. Ind. Code Ann. § 35-48-4-7 (West 2012); Appellant's App. p. 12. The existence of a valid prescription for a controlled substance is a defense to the crime of possession. *Williams v. State*, 959 N.E.2d 360, 363 (Ind. Ct. App. 2012). The defendant bears the burden of proving this defense by a preponderance of the evidence. *Id.*

[6] On December 3, 2013, Lundy served a request for production of documents by a non-party and a subpoena duces tecum on "INSPECT RX." Appellant's App. p. 35. Specifically, Lundy requested a "certified copy of any and all prescription records for Angela Lundy" and gave her date of birth and social-

security number. *Id.* at 36. At the time of this request, Lundy "knew where she could possibly obtain records of her prescription."[1] *Id.* at 60.

[7]    INSPECT[2] is Indiana's electronic prescription monitoring program, which is administered by the Indiana Board of Pharmacy. *Williams*, 959 N.E.2d at 363. It was designed to serve as a tool to address the problem of prescription-drug abuse and diversion in Indiana. Indiana Professional Licensing Agency, *INSPECT Purpose & Goals*, IN.gov, http://www.in.gov/pla/inspect/2338.htm (last visited Feb. 9, 2015). By compiling controlled-substance information into an online database, INSPECT performs two critical functions: (1) maintains a warehouse of patient information for health-care professionals and (2) provides an important investigative tool for law enforcement. *Id.* Specifically, the INSPECT program maintains a searchable, online database compiled from information that is required by law to be transmitted by controlled-substance dispensers, including the controlled-substance recipient's name, identification number, date of birth, and method of payment for the controlled substance dispensed; the date the controlled substance is dispensed; the quantity and number of days' supply of the controlled substance; and the United States Drug Enforcement Agency registration number for both the prescriber and the dispenser. Ind. Code §§ 35-48-7-8.1, -10.1. An INSPECT report then

---

[1] This information is taken from Lundy's petition to certify order for interlocutory appeal, filed in the trial court in March 2014.

[2] INSPECT stands for the "Indiana scheduled prescription electronic collection and tracking program." Ind. Code § 35-48-7-5.2.

summarizes the controlled substances a patient has been prescribed, the practitioner who prescribed them, and the dispensing pharmacy where the patient obtained them. Indiana Professional Licensing Agency, *About INSPECT*, IN.gov, http://www.in.gov/pla/inspect/2338.htm (last visited Feb. 9, 2015). The information received is confidential and may be disclosed to only certain individuals. Ind. Code § 35-48-7-11.1(d). Notably, the patient is not listed as a person who is authorized to receive information from the INSPECT database. *See Williams*, 959 N.E.2d at 367 ("Conspicuously absent from the list of persons specifically authorized to receive information from the INSPECT database is the person for whom a controlled substance is prescribed and dispensed—in other words, the patient.").

[8] The Board, represented by an attorney from the Office of the Indiana Attorney General, filed a motion to quash Lundy's subpoena duces tecum on the grounds that the requested records were confidential pursuant to statute. Appellant's App. p. 27-32. The trial court held two hearings on the Board's motion to quash. At the first hearing in January 2014, the parties discussed this Court's recent decision in *Williams*. The trial court ruled that *Williams* required Lundy to make a threshold showing that she could not get her prescription records elsewhere before she was entitled to her INSPECT report from the Board. Therefore, the court continued the hearing until March 2014 to give Lundy an opportunity to make this showing. Defense counsel said that she did not want Lundy to testify. Tr. p. 16, 19. In the meantime, the trial court urged the parties to resolve the matter on their own. *Id.* at 28.

[9]     At the beginning of the hearing in March 2014, the Board attorney informed the trial court that he and defense counsel "were not able to come to an informal resolution" so "the Board would ask the Court [to] make a ruling on its Motion to Quash." *Id.* at 34. Defense counsel did not present any evidence. The trial court granted the Board's motion to quash and certified its ruling for interlocutory appeal. In June 2014 we accepted jurisdiction of this appeal.

# Discussion and Decision

[10]    Lundy contends that the trial court erred in ruling that she was required to make a threshold showing that she could not get her prescription records elsewhere before she was entitled to her INSPECT report from the Board.

[11]    A trial court has broad discretion with regard to rulings on discovery matters given its duties to promote discovery of the truth and to guide and control the proceedings. *Williams,* 959 N.E.2d at 364-65. Consequently, such rulings will be reversed only for an abuse of discretion, which occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Id.* at 365.

[12]    We addressed this issue in *Williams* and held that certain defendants who are facing charges of possession of a controlled substance are entitled to their INSPECT report from the Board. Williams was charged with two counts of Class D felony possession of a controlled substance for possessing methadone and alprazolam. Williams served a request for production of documents by a

non-party and a subpoena duces tecum on INSPECT. The Board filed a motion to quash the subpoena, asserting that the requested information was confidential pursuant to statute. At the hearing, Williams testified that he remembered the doctors who prescribed him the controlled substances, but he could not remember the pharmacies where he got the prescriptions filled. The trial court granted the Board's motion to quash and certified its ruling for interlocutory appeal.

[13] On appeal, in determining whether Williams was entitled to his INSPECT report from the Board, we applied the Indiana Supreme Court's three-part test for the discoverability of records by a criminal defendant: (1) there must be sufficient designation of the items sought to be discovered (particularity); (2) the requested items must be material to the defense (relevance or materiality); and (3) if the first two requirements are met, the trial court must grant the request unless there is a showing of a "paramount interest" in nondisclosure. *Id.* (citing *In re Crisis Connection, Inc.*, 949 N.E.2d 789, 794 (Ind. 2011)). Ultimately, the three-part test for discoverable information in a criminal proceeding involves balancing the relevance of the material, its availability from other sources, the burden of compliance measured in terms of difficulty, and the nature and importance of the interests invaded. *Id.* at 367 (citing *In re WTHR*, 693 N.E.2d 1, 7 (Ind. 1998)).

[14] Although this three-part test does not apply to privileged information, we concluded that Williams had waived any privilege:

> To the extent that the confidential information in the [INSPECT] database might also be considered privileged, by virtue of either the physician-patient privilege or the pharmacist-patient privilege, that privilege inures to the patient, not the Board (or the physician or the pharmacist, for that matter). Here, Williams's request for information from the database regarding his prescriptions amounts to a waiver of any privilege, and therefore we conclude that the aforementioned three-part test for discoverability applies in this case.

*Id.* (footnote omitted).

[15] Regarding the first part, particularity, "the request must enable the subpoenaed party to identify what is sought and allow the trial court to determine whether there has been sufficient compliance with the request." *Id.* at 367-68 (quotation omitted). Particularity also requires a showing that the information is not readily available elsewhere. *Id.* at 368 (citing *In re WTHR*, 693 N.E.2d at 7).[3] What constitutes reasonable particularity will depend on the facts of each case, the crime charged, the nature of the items sought to be discovered, the degree of discovery of other items of information, and the nature of the defense. *Id.*

---

[3] In *In re WTHR*, the Indiana Supreme Court looked to *Dillard v. State*, 257 Ind. 282, 274 N.E.2d 387, 391 (1971), for guidance as to criminal discovery. In *Dillard*, the defendant demanded "a copy of any and all inter-office memo, notes, reports . . . of and concerning the robberies, the investigation of defendant herein and any and all persons suspected, interrogated and detained in connection therewith." The Supreme Court rejected this as an impermissible "fishing expedition or an attempted rummaging about in the police files hoping to turn up something to use at the trial." *Id.* at 392-93. In *In re WTHR*, the Court wrote:

> Although described as the particularity requirement, in reality this test also smuggled in the commonsensical elements of a showing that the information is not readily available elsewhere (the "degree of discovery of other items of information" in *Dillard*) and that the party seeking it is not engaged in a fishing expedition with no focused idea of the size, species, or edibility of the fish.

693 N.E.2d at 7; *see also Crawford v. State*, 948 N.E.2d 1165, 1168 (Ind. 2011) ("In general, the particularity requirement demands something more precise than give me everything related to the case." (quotation omitted)). Here, Lundy was not on a fishing expedition. Rather, she wanted her INSPECT report so that she could review her prescription history for hydrocodone.

"[T]he particularity requirement is not to be construed strictly against the defendant but should be administered so as to maximize pre-trial discovery and the benefits to the judicial system which flow therefrom." *Id.* (quotation omitted).

The Board argued that Williams's request for "any and all" of his prescription records was overly broad. However, we found that because the INSPECT database was computerized, "one would reasonably expect that producing 'any and all' of Williams's prescription records would not be especially burdensome." *Id.* The Board also argued that Williams could obtain information about his prescriptions from his treating physicians. However, we noted that Williams "could not remember the specific pharmacies that allegedly dispensed his prescriptions, and thus obtaining his records from the INSPECT database would verify whether those prescriptions were actually dispensed to him." *Id.* Furthermore, we noted that there was "no indication that such information would be available from his treating physicians." *Id.*

Regarding the second part, relevance or materiality, "[a]n item is 'material' if it appears that it might benefit the preparation of the defendant's case. The relevance of some information or items may be self-evident." *Id.* (quotation omitted). We found that "the relevance of Williams's prescription records [was] indeed self-evident [because] they would establish (or at least help to establish) a complete defense to the two possession charges." *Id.*

Because we concluded that Williams had made a sufficient showing of both particularity and relevance/materiality, we addressed whether the Board had shown a paramount interest in the nondisclosure of Williams's prescription records. We acknowledged that a legitimate interest in keeping the information or items confidential may suffice to deny discovery. *Id.* And the Board emphasized the confidentiality provisions of Indiana Code section 35-48-7-11.1, which provides that the information may be disclosed to only those persons or agencies delineated in the statute, not including the patient. Nevertheless, we responded:

> It seems obvious that the confidentiality provisions of Indiana Code Section 35-48-7-11.1 were enacted to uphold the protections of the physician-patient privilege and the pharmacist-patient privilege. Where, as here, a patient seeks to waive those privileges for the purpose of exercising his or her constitutional right to present a complete defense to charges in a criminal case, both the rationale for and the Board's interest in keeping the patient's prescription records confidential evaporate. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (citations and quotation marks omitted). Therefore, we conclude that the trial court abused its discretion in granting the Board's motion to quash Williams's subpoena and reverse and remand for further proceedings consistent with this opinion.

*Id.* at 368-69.

[18]  Here, the Board does not dispute the INSPECT report's relevance/materiality, which is the second part of the test. Appellee's Br. p. 6. However, the Board argues that this case "substantially differs" from *Williams* because Williams

"could not recall where his prescriptions were filled, and therefore, his prescription records were not available through other sources." *Id.* at 7. But here, "Lundy has failed to show she is unable to access her prescription records through her doctor's office, pharmacies, or hospitals[.]" *Id.* The Board points out that it was willing to disclose Lundy's INSPECT report *if* she was able to make a showing that she could not get her records elsewhere, Tr. p. 13, 23; however, Lundy "knew where she could possibly obtain records of her prescription." Appellant's App. p. 60.

[19] The three-part test involves balancing. *See Williams*, 959 N.E.2d at 367. As such, no one factor is controlling. As for particularity, it requires a showing that the information is not readily available elsewhere. Contrary to the Board's argument, "readily available" does not equate to knowledge. That is, just because Lundy knew where she could "possibly" obtain her prescription records does not mean that they were "readily available" to her. "Readily available" would include, for instance, a situation where the defendant had a prescription bottle at home and the prescription was valid,[4] and therefore there was no need for the defendant to request the record for it. But as defense counsel argued at the hearing on the Board's motion to quash, getting Lundy's records would have required "getting the correct medical release, filing the medical release, waiting 30 days, [and] paying[.]" Tr. p. 20; *see also* Appellant's

---

[4] A prescription obtained by fraud, deception, or misrepresentation is not a valid prescription. *See Schuller v. State*, 625 N.E.2d 1243, 1246 (Ind. Ct. App. 1993).

App. p. 60 ("Defense Counsel argued that the time needed to obtain this information via a prescriptions[-]record request from either the hospital or the pharmacy would far exceed the mere minutes it would take to obtain this information from the online INSPECT database."). In addition, the particularity requirement is not to be construed strictly against the defendant but should be administered so as to maximize pretrial discovery. Given that the three-part test for discoverable information in a criminal proceeding involves balancing, the Board does not challenge the second part of the test—relevance/materiality, Lundy only knew where she could "possibly" obtain her prescription records, the particularity requirement should be administered to maximize pretrial discovery, and Lundy seeks to waive any privilege for the purpose of exercising her right to present a complete defense to the charge of Class D felony possession of a controlled substance, we hold that Lundy is entitled to her INSPECT report from the Board.

[20] As for the Board's concern that such a holding "would significantly alter the function and purpose of the INSPECT program" by transforming it into a "clearing house for any criminal defendant charged with a possession crime to obtain his or her prescription records," Appellee's Br. p. 7-8, we note that the Board's attorney stated at the hearing that the Board already requires a low threshold before it will turn over an INSPECT report: "And just as I've said before, a really low bar of 'I simply don't recall' I think satisfies and my client would comply [by turning over the INSPECT report]." Tr. p. 23. Accordingly, the trial court abused its discretion in granting the Board's motion to quash

Lundy's subpoena. We therefore reverse and remand this case to the trial court.[5]

Reversed and remanded.

Baker, J., and Riley, J., concur.

---

[5] Because of this holding, we do not address Lundy's other arguments, such as the prosecutor should have provided Lundy with a copy of her INSPECT report upon request and the Board is not a non-party.